MATHEW TEASDALE, Appellee, v. THE CITY OF NEW YORK INSURANCE COMPANY, Appellant.

**Insurance:** AGENCY: EVIDENCE. Where an insurance company recognized its representative in the adjustment of plaintiff's loss, placed the whole matter in his hands, and upon his production as a witness for the company he testified directly to his official connection with the transaction, without any denial or repudiation of his authority, the company could not thereafter contend that such representative had no authority to waive a provision of the policy requiring verified proofs of loss within a specified time.

**Same:** PROOFS OF LOSS: WAIVER. Proofs of loss required by a policy of insurance may be waived by the dilatory and evasive conduct of a representative of the company, respecting an adjustment of the loss, which amounts neither to a distinct denial nor a recognition of liability, but are such as to lead a reasonably prudent man to believe that proofs of loss are not required. Evidence held to show a waiver of proofs.

*Appeal from Monroe District Court.*—HON. D. M. ANDERSON, Judge.

WEDNESDAY, FEBRUARY 11, 1914.

ACTION at law upon a policy of fire insurance. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*John F. Abegglen,* for appellant.

*John R. Price,* for appellee.

WEAVER, J.—On October 26, 1911, the defendant insurance company issued its policy to the plaintiff, indemnifying him against loss or damage by fire for a period of one year upon a certain stock of goods and store fixtures in a building situated in the village of Griffinville, Monroe county, Iowa. Thereafter, on November 11, 1911, and while said policy was in full force and effect, the property so insured was destroyed by fire. Among other stipulations of the policy, it was provided that in case of loss the insured should within 60 days give to the company written notice thereof, accompanied by affidavit as to how the loss occurred and the extent thereof. This action on said policy was begun August 30, 1912. The petition as finally amended alleges the issuance of the policy and the fact of the loss of the insured property by fire and that written notice of such loss was promptly given to the company. It also pleads certain correspondence had with the company and its agents and certain conduct and representations on their part as a waiver of the requirement that such notice be accompanied by an affidavit or other proof of loss, and, averring the failure of the defendant to make payment of said loss, demands judgment for recovery of his damages. Answering this claim, defendant admits the issuance of the policy, and that it received notice of the loss, but denies that it ever waived the requirement of the policy for an affidavit or sworn proof of such loss. It further pleads affirmatively the requirement of the policy for proofs of loss within 60 days after the fire, and alleges that such proofs were not furnished until long after such period had expired, for which reason plaintiff neither acquired nor has any right of action upon said policy.

The evidence tends to show that the policy was issued to plaintiff by one Sloan, then acting as defendant's agent, and that immediately after the fire plaintiff went to said agent, informed him of the loss, and asked him to report it to the company, which he promised to do and did do, sending the notice upon blanks prepared by the company for such purpose, one being sent to the home office and one to its special agent,

George W. Tones, having more immediate charge of the business in that territory. The notice clearly specified the number of the policy, its date, the name of the assured, the location of the property, the kind of property, the amount of insurance, the extent of the loss, and that the origin of the fire was unknown. No affidavit accompanied it. Receipt of the notice was acknowledged by both Tones and the home office. Tones visited the local agent once or twice after the notice of loss. Sloan's testimony is to the effect that Tones promised to return and meet the plaintiff with a view to adjusting or settling his claim and named a day for that purpose. This appointment was reported to plaintiff, who appeared at the agent's office at the time so fixed, but Tones did not appear. Referring to this same loss, Tones wrote Sloan under the date of November 20, 1911, as follows:

Your favor of the 15th inst. came to my attention this morning and I see that the fire referred to occurred on the 11th which was quite awhile ago. I had already made plans, depending on a telegram, to meet a man in Davenport on Wednesday morning and I received his telegram that he could be there. Therefore I will be unable to reach you on this matter until the latter part of this week when I shall be pleased to see you.

Yours truly, Geo. W. Tones.

Ten days later, apologizing for his nonappearance, Tones wrote again:

I suppose you think I am very careful of my engagements, but learned that two other adjusters, also interested in the same fires expected to take the matter up the latter part of this week, so have delayed it and because further I was called on another matter. So will let you know later just when to expect us. Possibly this week yet.

Yours, Geo. W. Tones.

All these matters were reported to plaintiff, who relied thereon, and took no further steps in the matter for some time, except to call frequently on the local agent and urge action upon his claim. Early in January, 1912, plaintiff consulted

counsel, who wrote directly to the home office calling attention to the loss, to the fact that Tones had come to Griffinville with reference to the matter, and had promised to return for its adjustment, but had failed to do so, and asked that immediate attention be given to the claim.    This letter the company answered as follows under date of January 13, 1912: ''We are in receipt of your favor of the 8th inst. regarding claim of Mathew Teasdale under policies 5090 and 5095, Albia, Iowa, agency and in reply beg to state that we are today writing our special agent Mr. Geo. W. Tones at Des Moines, Iowa, regarding the matter, and he will doubtless take the same up with you.'' Tones did not again ''take up'' the matter with counsel or with plaintiff, but on February 5, 1912, responding to an inquiry from the local agency, he wrote: ''Gentlemen: Your favor regarding Mathew Teasdale, received. As you know, we have done nothing from the first regarding this loss as to settlement, and do not expect to. There is no question, it appears, in the mind of Mr. Teasdale but that this fire was of incendiary origin, and nothing has been done to clear the matter up, so that as stated already we have taken no action whatever regarding its settlement, and do not intend to.'' This is substantially the entire record. The insurance is not denied and a total loss is shown without dispute. There is no issue or claim of any default, omission, or misconduct of the plaintiff, preceding the loss, by which his insurance was forfeited. The sole defense is based upon his failure to present formal proofs of such loss in strict compliance to a condition of the policy.

Assuming for the present that such defense may be technically good and perfect, if the default be admitted and no fact be shown to avoid its effect, it is a defense which does not appeal to the favor of courts, and a forfeiture so claimed will not be enforced if there be any reasonable ground on which to find that the condition has been waived. It is to be remarked in the first place that it is open to grave doubt whether the policy makes the failure of the insured to furnish

formal proofs in strict accordance with its terms operate as a forfeiture of the insurance. There are several clauses of the contract which specify in clear terms conditions, a violation of which shall render a policy "void," and other specific conditions upon which the company "shall not be liable for loss," but none of these make reference to proofs of loss. The clause pleaded and relied upon, which is separately stated and numbered, makes it the duty of the insured, when loss occurs, to protect the property from further damage, put it in good order, and within sixty days to furnish the company written notice thereof, with affidavit stating the facts of the loss and its extent, but contains no statement or declaration that a failure in any of these respects shall defeat the right of action for a recovery upon the policy. But, waiving this question and accepting for the purposes of this case the theory of counsel that a failure to comply with this provision if not waived is an absolute defense, we have still the question whether, under the conceded facts, the jury were not justified in finding there was such a waiver. It is to be said that the defense pleaded seems to be based entirely upon the provisions of the policy, and not upon any failure to comply with statutory regulations as to proofs of loss.

Counsel for appellant meets this proposition from two angles. In the first place it is strongly urged that the evidence is insufficient to find that Tones had any authority in the premises, and therefore no waiver can be predicated on his acts in reference to the matter. It appears to us that this is a very extreme position. That he was an agent of the company is shown by its own correspondence and by the evidence offered in its own behalf on the trial. That it recognized him as its representative in dealing with the plaintiff respecting this loss is shown by its written statement to plaintiff's counsel that its special agent George W. Tones would take the matter up with them. It is clear that the whole matter was placed in his hands. He alone took any action in the matter. It was he who

1. INSURANCE: agency: evidence.

came to Griffinville in response to the notice. He is produced as a witness for the company and as such reveals his direct and official connection with the transactions without denial or repudiation of his authority on the company's part, and it is he who, after the sixty days had expired, put an end to the plaintiff's hopes of adjustment by sending word to the local agent that "we do not intend" to take any action for the settlement of the claim. Not only is the agency and authority sufficiently shown, but, as we view the record, a finding of the jury to the contrary would be so clearly without support in the testimony that it could not be permitted to stand.

It is next argued that the facts which the evidence tends to establish are insufficient to constitute a waiver of the defense. Such is not our view of the record. The case is fairly ruled 2. SAME: proofs by decisions of which *Griffith v. Ins. Co.*, 143 of loss: waiver. Iowa, 88, is a leading example. In all essential respects, the facts in the cited case and in the one at bar are quite parallel, and the equities of the insured persons are equally apparent. Here, as there, the plaintiff reported his loss to the local agent with request that proper notice be given the company, and such notice was given by the agent, but no formal proofs of loss were ever furnished. Here, as there, the company gave no hint of objection to the sufficiency of the showing. Here, as there, the plaintiff, believing that he had done all that would be required of him until an adjuster arrived, was tolled along by promises of the early coming of such an agent until the sixty-day period had safely expired, when the company for the first time revealed its true purpose and intent by a distinct refusal to consider the claim at all. In sustaining a recovery under such circumstances, we said:

"Proofs of loss required by the policy of insurance may be waived by a shuffling, tricky, or evasive course of conduct on the part of the company, amounting neither to an actual denial or a distinct recognition of liability, yet such as to lead a reasonably prudent man to believe that proofs of loss are not to be required." See, also, *Nichols v. Ins. Co.*, 125 Iowa, 262;

*Harris v. Ins. Co.,* 85 Iowa, 238; *Morey v. Laird,* 108 Iowa, 670; *Pringle v. Ins. Co.,* 107 Iowa, 742; *Green v. Ins. Co.,* 84 Iowa, 135; *Lake v. Ins. Co.,* 110 Iowa, 473.

To say the very least of the conduct of the company in this case, it was evasive. If, as indicated in Tones' letter of February 5, 1912, it had never been the intention of the company to pay the loss, ordinary candor required that it should have said so in response to plaintiff's repeated requests for an adjustment; and if, having been informed of a total loss, it desired other or additional proof, then, when it appeared that plaintiff was acting in the belief that he had done all that would be required of him until the adjuster should come and make investigation according to promise, fair dealing demanded that he should be so informed. Plaintiff did give and defendant did receive notice of the loss of its character and amount. The only omission of which advantage is sought to be taken is in the failure to accompany it with a sworn statement. Speaking of a similar situation in *Nichols v. Ins. Co.,* 125 Iowa, 268, we said: "If defendant desired this [affidavit] it should in all fairness have requested it, and, as it did not do so, this defect was waived." So in *Green v. Ins. Co.,* 84 Iowa, 137, where the insured failed to furnish the required affidavit, but the company responded to an unsworn statement by promising to send an agent to investigate the matter, we said that: "If there had been any objection regarding the letter as proof of a loss, the plaintiff was authorized to presume that defendant would make such objection known. Good faith required that, if proofs were not satisfactory, notice should be given the assured . . . within at least a reasonable time. The plaintiff was authorized to rest upon the presumption that the defendant would act in good faith, and give him notice if the letter was not regarded as sufficient proof of loss. The defendant was bound to know that the plaintiff would so regard its failure to make objection to the insufficiency or want of proof." The conclusion from a reading of the record is quite irresistible that defendant must have known that plaintiff was proceeding

upon the understanding that he had done all he was required to do and was waiting the appearance of an agent or adjuster as promised. The defendant neither directly nor indirectly asked or demanded of him other notice or proof of loss, but gave him to understand that its agent would visit the place and take up the matter of adjusting his claim. As late as January 13, 1912, two days after the sixty days had elapsed, the home office informed counsel that it was then writing their Mr. Tones on the subject of the claim, and that he would "doubtless take the same up" with them. And, even when on February 5, 1912, defendant's agent put an end to the negotiation by declaring for the first time that it would "take no action whatever regarding the settlement" of the claim, such refusal was not based upon plaintiff's failure to make formal proof, but expressly justified its attitude upon the suggestion that the fire "was of incendiary origin, and nothing had been done to clean the matter up." Indeed, so far as this record is concerned, the insufficiency of the proof of loss was never advanced or relied upon as a defense to the claim until it was pleaded in the answer in this action. That in view of all these facts the jury was justified in finding that the failure to furnish formal proofs had been waived is too clear for controversy, and there was no error in denying defendant's motion for a directed verdict.

Some objections are raised to the giving of certain instructions and to the refusal of others requested. The points made in most of these objections are ruled adversely to the appellant by the conclusions already announced. There was some evidence tending to show that Tones, on one of his visits to the place after the fire, did make inquiry and investigation into the question whether plaintiff had not been conducting an unlawful business in the burned building, and that Tones was raising some objection to the claim on the theory that the fire was of incendiary origin. In its instructions, the court said, among other things, that, if Tones did so act and that plaintiff was informed thereof and was led thereby to believe that no

objection was being made because of the lack of final proof of loss, then a finding of waiver of such proof would be justified. This charge is objected to as submitting to the jury a question not raised by the pleadings. In our judgment, the issues made by petition and answer are broad enough to cover this proposition, and the exception must be overruled. Of the requested instructions it is sufficient to say that, so far as they state correct propositions of law, they are sufficiently covered by the charge of the court.

There is no error shown which will justify us in interfering with the judgment of the district court, and it is hereby *Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.